**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 2:18-cr-20406-JTF-tmp |
| | ) |
| KENNETH HICKS, | ) |
| | ) |
|     Defendant. | ) |

_____

**REPORT AND RECOMMENDATION**
_____

Before the court by order of reference are two motions to suppress filed by defendant Kenneth Hicks on January 3, 2020.[1] (ECF Nos. 168; 169.) The government filed a response to the motions on January 14, 2020. (ECF No. 174.) For the reasons set forth herein, the undersigned recommends that the motions to suppress be denied.

### I.   PROPOSED FINDINGS OF FACT

The following proposed findings of fact are based on the testimony of Memphis Police Sergeant Amber Webb, a member of the FBI's Tarnished Badge Task Force, who credibly testified at the evidentiary hearing. The defense did not call any witnesses at the hearing.

---

[1]The presiding district judge referred both motions to the undersigned for report and recommendation or determination, as appropriate, on January 9, 2020. (ECF No. 173.)

On July 13, 2018, Eric Cain was pulled over by individuals dressed as police officers. The individuals handcuffed Cain and transported him to a house on Reese Road in Memphis, Tennessee. Cain's captors beat and tortured him for several hours before Cain managed to escape by jumping out of the house's front window. Cain reported the incident to law enforcement officers, and the police obtained a search warrant for the Reese Road house. (See Search Warrant, Hearing Exhibit 1.)

During the corresponding search of the house, law enforcement found a cigarette butt on the kitchen floor. (See Photos, Hearing Exhibit 2.) Law enforcement submitted the cigarette butt for DNA analysis, which included a search of the FBI Combined DNA Index System ("CODIS") database. The resulting FBI Laboratory Report, dated May 15, 2019, indicated a possible DNA association between Hicks and the DNA on the cigarette butt. (See FBI Lab Report, Hearing Exhibit 3.) The search of the FBI CODIS database identified Hicks's DNA as that of "a convicted offender submitted by the Mississippi Forensics Laboratory." (Id.) The FBI lab report stated that "[a] confirmation sample from the identified suspect [Hicks] must be acquired to provide a conclusion about the possible DNA association." (Id. at 2.)

On May 16, 2019, Hicks was indicted by a Federal Grand Jury in the Western District of Tennessee. On May 17, 2019, Hicks was arrested and transported to the FBI Memphis Division Field Office.

Hicks was read his *Miranda* rights, which he initially waived. (See Rights Waiver, Exhibit 4.) During the subsequent conversation with FBI agents, Hicks repeatedly asked for coffee and cigarettes. FBI agents informed Hicks that his DNA was found on the cigarette butt collected from the house on Reese Road. Soon after, Hicks advised the FBI agents that he wanted to speak with an attorney.[2] While the agents escorted Hicks to processing, he continued to request cigarettes. Agents procured cigarettes for Hicks and allowed him to smoke two cigarettes outside of the FBI building. After smoking the cigarettes, Hicks threw the cigarette butts on the ground. As he flicked one of the cigarette butts to the ground, Hicks said "here's your DNA" to the agents. (See hearing transcript at 19.)

While agents escorted Hicks back inside for processing, another agent present at the time remained outside to secure the area and collect the cigarette butts. Law enforcement submitted the cigarette butts for forensic analysis without obtaining a search warrant. The DNA from those cigarette butts matched the DNA sample from the cigarette butt collected from the Reese Road house. Hicks now moves to suppress the DNA evidence from the two cigarette butts collected outside the FBI field office. (ECF No. 169.)

---

[2]According to Hicks, the agents improperly asked him about his preference in cigarettes after he invoked his right to counsel. His responsive statement is the subject of one of his motions to suppress (ECF No. 168), which is addressed below.

## II.  PROPOSED CONCLUSIONS OF LAW

### A.    Motion to Suppress Search

Hicks seeks suppression of the DNA evidence from the two cigarette butts collected at the FBI field office, arguing that the government's failure to obtain a search warrant before analyzing his DNA ran afoul of the Fourth Amendment's prohibition of unreasonable searches and seizures.[3] The government contends that the Fourth Amendment is inapplicable because Hicks abandoned the cigarette butts.

"[T]he central inquiry in any suppression hearing is whether the defendant challenging the admission of evidence has shown a legitimate expectation of privacy in the place searched or the thing seized." United States v. Adams, 583 F.3d 457, 463 (6th Cir. 2009) (quoting United States v. King, 227 F.3d 732, 743 (6th Cir. 2000)); see also United States v. Eastman, 645 F. App'x 476, 479 (6th Cir. 2016) ("To claim the protections of the Fourth Amendment, a defendant must have 'a legitimate expectation of privacy in the invaded space.'") (quoting Rakas v. Illinois, 439 U.S. 128, 143 (1978)). "[A] person who voluntarily abandons property in the absence of an unconstitutional seizure has no legitimate expectation of privacy in it, and therefore its search or seizure

---

[3]This motion to suppress, as defense counsel clarified at the evidentiary hearing, pertains only to the analysis of Hicks's DNA from the cigarette butts collected from the FBI field office.

does not violate his Fourth Amendment rights." <u>Eastman</u>, 645 F. App'x at 479 (citing <u>United States v. Robinson</u>, 390 F.3d 853, 873-74 (6th Cir. 2004); <u>United States v. Frazier</u>, 936 F.2d 262, 265 (6th Cir. 1991)). As a result, "[g]enerally, neither a warrant nor probable cause is required to seize and search property that has been abandoned." <u>United States v. Eden</u>, 190 F. App'x 416, 421 (6th Cir. 2006) (citing <u>Abel v. United States</u>, 362 U.S. 217, 241 (1960); <u>United States v. Oswald</u>, 783 F.2d 663, 666 (6th Cir. 1986)).

"A legitimate expectation of privacy exists when a defendant, 'by his conduct, has exhibited an actual (subjective) expectation of privacy'—that is, has sought 'to preserve something as private'—and when his 'subjective expectation of privacy is one that society is prepared to recognize as reasonable.'" <u>United States v. Mathis</u>, 738 F.3d 719, 729 (6th Cir. 2013) (quoting <u>Smith v. Maryland</u>, 442 U.S. 735, 740 (1979)). A subjective expectation of privacy gives rise to Fourth Amendment protection only if "society is prepared to accept that expectation as objectively reasonable." <u>California v. Greenwood</u>, 486 U.S. 35, 39-40 (1988); <u>see also</u> <u>Bond v. United States</u>, 529 U.S. 334, 338 (2000). "[N]o person can have a reasonable expectation of privacy in an item that she has abandoned." <u>Eden</u>, 190 F. App'x at 421 (citing <u>Hester v. United States</u>, 265 U.S. 57, 58 (1924)); <u>see also</u> <u>Greenwood</u>, 486 U.S. at 41 (concluding that "society would not accept as reasonable

respondents' claim to an expectation of privacy in trash left for collection in an area accessible to the public").

The first inquiry is whether Hicks exhibited a subjective expectation of privacy by seeking "to preserve something as private." See Mathis, 738 F.3d at 729. The "crux of the inquiry" is Hicks's conduct. See Eden, 190 F. App'x at 425 ("[W]hether abandonment has occurred is determined by the acts or omission of the property owner, as observed by a law enforcement officer.") (emphasis omitted). "Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other objective facts." United States v. Dillard, 78 F. App'x 505, 510 (6th Cir. 2003) (citing United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973)). In this case, Hicks made no attempt to preserve the cigarette as private. Nor did he attempt to preserve his DNA. In fact, he did the opposite. Not only did Hicks discard the cigarette butts on the ground outside the FBI field office and walk away, but he went so far as to tell law enforcement officers "here's your DNA" as he flicked one of the cigarette butts to the ground. This sort of conduct clearly demonstrates an intent to abandon the cigarette butts. See Eden, 190 F. App'x at 425 (identifying "oral disclaimers" and "voluntary, unambiguous conduct" as indications of abandonment).

Yet, Hicks asks the court to distinguish between abandoning the cigarette butts and abandoning the DNA they contained. In fact,

Hicks seems to concede that he abandoned the cigarette butts, but he argues that this does not amount to abandonment of the DNA those cigarettes contained. However, Sergeant Webb's uncontroverted testimony indicates that Hicks told law enforcement officers "here's your DNA" as he discarded one of the cigarette butts. Thus, even assuming *arguendo* that there is a basis for distinguishing between a discarded item and the DNA it contains for Fourth Amendment purposes, Hicks's conduct and statements—made shortly after being interviewed by agents-clearly demonstrated an abandonment of both the cigarette butts and his DNA. See id. Accordingly, the government lawfully obtained the DNA sample without running afoul of the Fourth Amendment.

Hicks asserts that other courts have found that DNA analysis constitutes a search for Fourth Amendment purposes. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616 (1989); United States v. Mitchell, 652 F.3d 387, 407 (3d Cir. 2011); United States v. Davis, 690 F.3d 226, 246 (4th Cir. 2012). None of these cases, however, involve abandonment, which limits their applicability to the instant case. Moreover, none of these cases indicates that the privacy interest in DNA cannot be abandoned. What would otherwise be a strong expectation of privacy does not give rise to Fourth Amendment protections if surrendered. Eden, 190 F. App'x at 421 (citing Oswald, 783 F.2d at 666); see also United States v. Green, No. 6:17-CR-26-GFVT-HAI-1, 2018 WL 3212074, at *4 (E.D. Ky. Mar.

27, 2018) ("[A] person with a constitutionally-recognized privacy interest in a piece of property can give up that privacy interest by relinquishing that interest.") (citing Eden, 190 F. App'x at 425).

Hicks also relies on these cases to argue that the collection and forensic analysis of DNA constitute two separate searches. See Skinner, 489 U.S. at 616; Mitchell, 652 F.3d at 407; Davis, 690 F.3d at 246. Thus, Hicks argues that even if the government lawfully obtained his DNA sample, it could not analyze the DNA without a warrant. Neither Skinner nor Mitchell are directly on point because they involved challenges to the collection of DNA samples rather than a challenge to the extraction of DNA from a lawfully obtained sample.

The Davis case, on the other hand, squarely holds that the collection of a DNA sample and the analysis of that sample are two distinct searches for Fourth Amendment purposes. Davis, 690 F.3d at 232-33. However, Davis is distinguishable. In Davis, the government initially obtained Davis's DNA from an article of clothing collected in relation to an armed robbery in which Davis was the victim. Id. at 230. Police never tested Davis's clothing or DNA in connection to that crime. Id. at 231. It was not until Davis became a suspect in a murder investigation four years later that the government extracted Davis's DNA from his clothing, without a warrant, and created a DNA profile from the test results.

Id. The government then added the DNA profile to their local DNA database. Id. The Davis court found that while law enforcement had lawfully obtained Davis's clothing, its subsequent extraction and testing of his DNA violated the Fourth Amendment. Id. at 232-33.

As an initial matter, Davis appears to be an outlier among courts to consider the issue. Within the Sixth Circuit, at least one district court has determined that "a person has no reasonable expectation of privacy in his or her DNA profile extracted from a lawfully obtained DNA sample." Emerson v. Kelly, No. 1:14-cv-00809, 2015 WL 3968250, at *14 (N.D. Ohio June 30, 2015) (collecting cases). This suggests that when Hicks abandoned the cigarette butts containing his DNA sample, he surrendered any expectation of privacy in the DNA profile extracted from that sample. See id. at *13 ("[A] defendant [can] not plausibly assert any expectation of privacy with respect to the scientific analysis of a lawfully seized item of tangible property[.]") (quoting Wilson v. State, 132 Md.App. 510, 545 (2000)). Moreover, the Emerson court noted that "retention by the state of a DNA profile for possible future comparison with profiles obtained from unknown samples taken from a victim or a crime scene does not differ from the retention by the state of fingerprints for use in subsequent investigations." Id. "[N]o matter how many times defendant's blood is tested, the DNA results would be identical." Id. (quoting Bickley v. State, 227 Ga.App. 413, 415 (1997)).

-9-

Other courts have found one's abandonment of an item containing his or her DNA sufficient to permit the government to conduct forensic analysis on that sample without a warrant. One particularly instructive case is Parisi v. Artus, No. 08-CV-1785, 2010 WL 4961746 (E.D.N.Y. Dec. 1, 2010). In Parisi, officers placed a blanket over the defendant's head when he became abusive and began spitting at them. Id. at *6. The officers later found the blanket in the garbage and had it tested for DNA. Id. The court in Parisi held that "a suspect arrested upon probable cause does not have a reasonable expectation of privacy in items discarded while in police custody, even if his DNA is later collected from them." Id. (citing Roe v. Marcotte, 193 F.3d 72, 80 (2d Cir. 1999) ("With the person's loss of liberty upon arrest comes the loss of at least some, if not all, rights to personal privacy otherwise protected by the Fourth Amendment.") (quoting Jones v. Murray, 962 F.2d 302, 306 (4th Cir. 1992)); People v. Ayler, No. 3217/2003, 2004 WL 2715317, at *4-5 (N.Y. Sup. Ct. Sep. 22, 2004) (finding no reasonable expectation of privacy in cigarette butts discarded in police interview room); People v. Sterling, 57 A.D.3d 1110, 1112, 869 N.Y.S.2d 288 (3d Dep't 2008) (finding no reasonable expectation of privacy in discarded milk carton)). The Parisi court went on to explicitly rely on the Ayler case, which involved the government obtaining DNA from discarded cigarette butts:

> Ayler involved a suspect in police custody who had smoked
> in the interview room; his DNA was later collected from
> the discarded cigarette butts, yielding a DNA match with
> semen recovered from sexual assault kits from three
> different victims. The court there held that "defendant
> could have no reasonable expectation of privacy in the
> ... interview room or in any items he discarded there,"
> and further that it is "not reasonable to expect that
> garbage discarded in a police interview room would
> remain undisturbed out of respect for the privacy of the
> person who left it there." Ayler, []2004 WL 2715317, at
> *5. That conclusion is no less true here. Parisi had no
> reasonable expectation of privacy in the holding room,
> any item left in the garbage there, or in the DNA that
> was collected from the blanket. See, e.g., United States
> v. Amerson, 483 F.3d 73, 85-86 (2d Cir.2007) ("[W]hen a
> suspect is arrested upon probable cause, his
> identification becomes a matter of legitimate state
> interest and he can hardly claim privacy in it.")
> (quoting Jones v. Murray. 962 F.2d 302, 306 (4th
> Cir.1992)).

Parisi, 2010 WL 4961746, at *6. The court found that by spitting

onto the blanket while resisting arrest, the defendant had provided

a voluntary DNA sample. Id. The same logic applies here where Hicks

told law enforcement officers "here's your DNA" while discarding

one of his cigarette butts.

Another example is United States v. Green, No. 09-00139-01-

CR-W-DGK, 2010 WL 5502347 (W.D. Mo. Dec. 14, 2010), in which the

defendant refused to consent to a buccal swab during an

interrogation for purposes of obtaining a DNA sample. Id. at *3.

After the defendant was returned to his cell, law enforcement

officers noticed that the defendant left behind a Styrofoam cup he

had been drinking from during the interview. Id. The officers had

the cup taken for DNA analysis. Id. The court held that the

defendant had abandoned the cup and therefore had no expectation of privacy in it. Id. at *7 (citing People v. Sterling, 57 A.D.3d 1110, 1112, 869 N.Y.S.2d 288 (3d Dep't 2008) (finding no reasonable expectation of privacy in discarded milk carton); Commonwealth v. Bly, 448 Mass. 473, 862 N.E.2d 341, 356-57 (2007) (suspect connected to murder by DNA analysis of water bottle and cigarette butts he left behind after interview with police); State v. Athan, 160 Wash.2d 354, 158 P.3d 27, 37 (2007) (no constitutional violation where police addressed phony class-action mailing to suspect in cold rape case and obtained suspect's DNA from saliva on return envelope since the "analysis of DNA obtained without forcible compulsion and analyzed by the government for comparison to evidence found at a crime scene is not a search under the Fourth Amendment."); People v. Ayler, 2004 WL 2715317, at *4-5 (N.Y. Sup. Ct. Sep. 22, 2004) (finding no reasonable expectation of privacy in cigarette butts discarded in police interview room); State v. Wickline, 232 Neb. 329, 440 N.W.2d 249, 253 (1989) (police not required to obtain warrant to test cigarettes defendant left at police station because he "abandoned these items and sufficiently exposed them to the officer and the public to defeat his claim to fourth amendment protection")).

When faced with a similar factual scenario, the court in United States v. Scott, No. 10-00027-01-CR-W-ODS, 2011 U.S. Dist. LEXIS 131253 (W.D. Mo. Oct. 3, 2011), stated "the DNA obtained

from the cup Defendant left on the coffee table should not be suppressed as the warrantless search of abandoned property does not violate the Fourth Amendment." Id. at *14 (citing United States v. James, 353 F.3d 606, 615-16 (8th Cir. 2003); United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997); United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994); Green, 2010 WL 5502347 at * 7).

In United States v. Green, 12-CR-83S, 2016 U.S. Dist. LEXIS 87388 (W.D.N.Y. July 6, 2016), the defendant moved to suppress "a blood-stained tissue removed from a trash can in the men's bathroom at Buffalo Police headquarters." Id. at *30-31. The court held that "Green 'had no reasonable expectation of privacy in the holding room, any item left in the garbage there, or in the DNA that was collected' from the tissue." Id. at *32 (quoting Parisi, 2010 WL 4961746, at *6). Based on the cases discussed above, it appears that Davis is contrary to the weight of authority on this issue. Unlike Davis, these cases indicate that Hicks's abandonment of his DNA deprived him of an expectation of privacy that would give rise to Fourth Amendment protections.

In addition, Davis involved a unique factual scenario, one which the Fourth Circuit Court of Appeals acknowledged severely limits the scope of its applicability in other cases:

> [A]s we have repeatedly made clear, our finding of a constitutional violation in this case was based on the specific and unusual facts of this case. Here, the police

> properly seized a piece of evidence from a victim in one
> crime, but then unconstitutionally used DNA evidence
> extracted from that evidence in investigating an
> unrelated crime in which the original victim was a
> suspect. They did so without consent from the victim and
> without obtaining a warrant, and thus we have found a
> violation. But a change in any one of those facts might
> have rendered the inclusion of Davis' DNA in CODIS
> constitutionally permissible.

Id. at 255. The distinguishing characteristic here is that Hicks,

unlike Davis, was not the victim of a crime when the government

obtained his DNA. The Davis court voiced clear concerns based on

Davis's status as a victim at the time his DNA was obtained. See

id. at 244 ("[T]o allow the testing and retention of DNA profiles

from any evidence lawfully obtained by police could expose a victim

of a crime whose blood, or other material from which DNA could be

obtained, to having his or her DNA extracted and retained

indefinitely in a law enforcement database.").

The court explicitly distinguished between the privacy

interest of a victim in their DNA and that of an arrestee. See id.

at 244 (noting that decisions by the federal courts of appeal

"addressing whether, and under what circumstances, the

Constitution allows the collection of DNA samples, uniformly

recognize that persons who have not been arrested have a greater

privacy interest in their DNA than would persons who have been

arrested"). The Davis court once again relied on this distinction

when voicing its ultimate conclusion on the issue:

> Based on the foregoing, we conclude that the holding in
> [United States v. Edwards, 415 U.S. 800 (1974)] does not
> give a law enforcement agency carte blanche to perform
> DNA extraction and analysis derived from clothing
> lawfully obtained from the victim of a crime in relation
> to the investigation of other crimes. Instead, a victim
> retains a privacy interest in his or her DNA material,
> even if it is lawfully in police custody. Therefore, we
> conclude that the extraction of Davis' DNA sample from
> his clothing and the creation of his DNA profile
> constituted a search for Fourth Amendment purposes.

Id. at 246. In light of the distinction between the underlying
factual scenarios, Davis does not apply in this context. For this
reason, it is recommended that the motion to suppress be denied.

The government also argues that the court should deny the
motion to suppress based on the inevitable discovery doctrine.
Because the court recommends dismissal based on abandonment, the
court need not reach the applicability of the inevitable discovery
doctrine to this case.

**B.   Motion to Suppress Statement**

Hicks also moves to suppress statements he made to law
enforcement officers after invoking his right to counsel. (ECF No.
168 at 2.) According to Hicks, law enforcement officers improperly
asked what type of cigarettes Hicks smoked after he had invoked
his right to counsel. (Id.) Hicks accordingly seeks to suppress
his responsive statement. (Id.) According to the government's
response, "the government does not intend to introduce any
statements made by the Defendant to law enforcement after he
requested an attorney[.]" (ECF No. 174 at 1.) In light of this

representation, which defense counsel agreed resolves the motion[4], it is recommended that the motion to suppress the statement be denied as moot.

### III. RECOMMENDATION

Based on the foregoing analysis, the undersigned recommends that the motions to suppress be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

May 27, 2020
Date

### NOTICE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[4]See Hearing Transcript at 4.